**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DANIEL J. BURG**                                                **CIVIL ACTION NO.**

**VERSUS**

                                                                      **25-427-BAJ-EWD**

**THE RECREATION AND PARK**
**COMMISSION FOR THE PARISH**
**OF EAST BATON ROUGE (BREC)**

## NOTICE

     Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

     In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

     ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

     Signed in Baton Rouge, Louisiana, on March 11, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

D. Burg by regular mail and by certified return receipt requested no. 7020 0640 0001 4750 5586

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DANIEL J. BURG**                                    **CIVIL ACTION NO.**

**VERSUS**

                                                      **25-427-BAJ-EWD**

**THE RECREATION AND PARK
COMMISSION FOR THE PARISH
OF EAST BATON ROUGE (BREC)**

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION,[1] AND ORDER

Before the Court is the Motion for Summary Judgment ("Motion"),[2] filed by The Recreation and Park Commission for the Parish of East Baton Rouge ("BREC" or "Defendant"), which is opposed by Daniel J. Burg, ("Burg" or "Plaintiff"), who is representing himself.[3] Because there is no genuine issue of material fact that Plaintiff's unpaid suspension did not result in the loss of his exempt status, and that BREC did not unlawfully retaliate against Plaintiff, it is recommended that the Motion be granted, dismissing Plaintiff's claims with prejudice. It is recommended that BREC's argument under 29 C.F.R. § 541.602(a)(1), raised for the first time in reply, be disregarded, and that Plaintiff's Motion for Leave to File Sur-Reply, which primarily seeks to address BREC's argument under 29 C.F.R. § 541.602(a)(1), be denied.[4] Considering the recommendation for the dismissal of Plaintiff's claims in this case, it will be ordered that all other

---

[1] A motion for summary judgment is excepted from the motions a magistrate judge may rule on directly under 28 U.S.C. § 636(b)(1)(A). Therefore, this Report and Recommendation is issued under 28 U.S.C. § 636(b)(1)(B).

[2] R Doc. 13. Documents filed in the record are referred to as "R. Doc. __." *See also*, R. Doc. 20 (Defendant's Reply Memorandum in Support of Motion for Summary Judgment) ("First Reply"); R. Doc. 56 (Defendant's Memorandum in Reply to Plaintiff's Amended Memorandum in Opposition to Defendant's Motion for Summary Judgment) ("Second Reply"). Defendant's Second Reply incorporates part of the First Reply.

[3] R. Doc. 40 (Plaintiff's Amended Memorandum in Opposition to Defendant's Motion for Summary Judgment) ("Opposition").

[4] R. Doc. 54; R. Doc. 56, p. 2.

pending motions[5] be terminated without prejudice to reurging, if the case is not dismissed. It will also be ordered that Defendant's Reply to Plaintiff's Amended Statement of Disputed Material Facts[6] be filed in the record.

## I.    BACKGROUND

The pertinent facts are as follows, which are undisputed, unless otherwise noted.[7] BREC is a political subdivision of the state of Louisiana.[8] From March 5, 2018 through April 21, 2025, Plaintiff was BREC's salaried Aquatics Manager.[9] According to BREC's Aquatics Manager job description, upon which Plaintiff relies, the Aquatics Manager "[p]erforms administrative, supervisory, and professional work in operation and maintenance of [BREC] swimming pools, spray pads, and Liberty Lagoon water park"…. As Aquatics Manager, Plaintiff's job specifications included the ability to supervise and train lifeguards and establish and maintain effective working relationships with employees, as well as knowledge of BREC's Rules and Regulations for properties and activities. Plaintiff's job duties included, "oversee[ing] and coordinat[ing] the day to day operation [,] including but not limited to: … training, scheduling, certification and performance of employees…in compliance with all federal state and local

---

[5] R. Docs. 45, 48.

[6] R. Doc. 49-3. Defendant's Motion for Leave to File Reply Memorandum In Response to Plaintiff's Amended Memorandum (R. Doc. 40) and Amended Statement of Disputed Material Facts (R. Doc. 40-1) in Opposition to Defendant's Motion for Summary Judgment was previously granted by the Court. R. Docs. 49, 50, 56.  However, Defendant's Reply to Plaintiff's Amended Statement of Disputed Material Facts was inadvertently not entered into the record at that time.

[7] The facts are taken from R. Doc. 13-3 (Defendant's Statement of Uncontested Material Facts In Support of Motion for Summary Judgment ("Defendant's Statement")), R. Doc. 40-1 (Plaintiff's Amended Statement of Disputed Material Facts in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Statement") as well as R. Doc. 1 (Complaint) and R. Doc. 40-2 (Plaintiff's Sworn Affidavit).  Defendant did not challenge Plaintiff's Affidavit. Plaintiff also filed another statement of Undisputed and Disputed Material Facts within the body of his Amended Opposition. R. Doc. 40, pp. 2-4.

[8] R. Doc. 13-3, ¶ 1; R. Doc. 40-1, p. 1; R. Doc. 1, ¶ 3.

[9] R. Doc. 13-3, ¶¶ 2-3; R. Doc. 40-1, p. 2; R. Doc. 1, ¶¶ 2, 6; and R. Doc. 40-2, ¶ 2.

regulations for the operation of public swimming pools."[10] BREC has Rules and Regulations that govern disciplinary actions,[11] among other matters, and Plaintiff signed a form acknowledging BREC's Rules and Regulations in 2018.[12]

BREC's Internal Audit team conducted an internal process review of Plaintiff and two employees reporting to Plaintiff at Liberty Lagoon: Assistant Aquatics Manager, Bryson Barrett ("Barrett"), and Head Lifeguard, Olivia Durand ("Durand").[13] Plaintiff was responsible for the supervision of these employees.[14] In the September 23, 2024 Final Report of the investigation (the "Final Report"), Internal Audit found instances in which Barrett and Durand clocked in to work, and then left work to engage in non-work-related personal activities without clocking out. The Final Report concluded that Barrett's actions resulted in payroll fraud.[15] Plaintiff does not challenge the payroll fraud findings regarding Barrett and all parties acknowledge that, prior to his suspension, Plaintiff conducted his own investigation of Barrett's timekeeping practices, and similarly found that Barrett was not accurately reporting his time, for which Plaintiff suspended Barrett.[16] Plaintiff says he used BREC's camera surveillance system to conduct his investigation

---

[10] R. Doc. 40-2, ¶ 5 and R. Doc. 40-3, pp. 58-59.

[11] R. Doc. 13-3, ¶ 4, citing R. Doc. 13-2, p. ¶ 5 (Affidavit of BREC Chief Administrative Officer and General Counsel Aneatra Boykin ("Boykin")) (attaching R. Doc. 13-2, Chapter 10 of BREC's Rules and Regulations, "Disciplinary Actions, Separation and Appeals" ("Chapter 10")). Plaintiff did not challenge Boykin's Affidavit statements. *See also* R. Doc. 40-1, p. 2 (Plaintiff's admission of awareness of an employee handbook and admission of signing an acknowledgement form, but disputing awareness of the current version of the handbook) and R. Doc. 40-2, ¶ 12 (Plaintiff's Affidavit stating that BREC emailed him an incomplete version of the Rules and Regulations and also referencing another version of them) and R. Doc. 40-3, pp. 44-46 (Plaintiff's Affidavit attaching portions of the same Chapter 10 relied on by BREC).

[12] R. Doc. 13-3, ¶ 4, citing R. Doc. 13-2, p. 2, ¶ 8, which has attached R. Doc. 13-2, p. 19 (Plaintiff's acknowledgment signed 2/8/2018).

[13] R. Doc. 13-2, p. 2, ¶ 10, citing R. Doc. 13-2, pp. 26-31.

[14] R. Doc. 40-3, pp. 33, 59.

[15] R. Doc. 13-2, pp. 27-31.

[16] R. Doc. 1, ¶ 7 ("In **October 2024**, Plaintiff suspended a Facility Manager with **pay** pending an internal investigation into payroll fraud" ….) (emphasis in original) and *see* R. Doc. 40-3, p. 9 ('This situation follows my decision to suspend an employee for stealing time….").

of Barrett, but BREC took away Plaintiff's camera access, removed Plaintiff from his investigation, and turned the investigation over to Internal Audit. Plaintiff further contends that BREC reinstated Barrett without consulting Plaintiff, and Barrett filed a grievance against Plaintiff.[17]

The Final Report also found that, while Barrett retained receipts for work-related purchases made on his BREC-issued purchasing card ("P-card)," Barrett did not upload his P-card receipts as required because he did not have access to the applicable program, and thus the purchases were not reported; accurate P-card statements were not presented to Plaintiff for review, as required; and the transactions were excluded from accurate reporting and reconciliation by BREC's Finance Department.[18] Plaintiff also does not dispute, in his Complaint or Opposition, Internal Audit's findings regarding his lack of review of Barrett's P-card purchases.[19] The Final Report also found that Plaintiff's "limited presence at Liberty Lagoon, combined with the lack of adequate training for young managerial staff, contributed to payroll fraud and timekeeping violations."[20] Plaintiff does not dispute that his presence at Liberty Lagoon was limited, that Barrett and Durand lacked sufficient training, or that payroll fraud and timekeeping violations were found.[21]

---

[17] R. Doc. 1, ¶¶ 7-10.

[18] R. Doc. 13-2, p. 29.

[19] On this point, Plaintiff attached to his Affidavit what he alleges is a transcript of a January 14, 2025 meeting between he and one of his superiors, Superintendent Corey Wilson ("Wilson"), during which the findings underlying Plaintiff's suspension were discussed. R. Doc. 40-3, pp. 12-22. As noted below, however, the transcript, which claims to be "Transcribed by TurboScribe.ai," is unreliable and unauthenticated, and will not be considered.

[20] R. Doc. 13-2, p. 29. Both the Internal Audit timeline and the Motion also allege that, in October 2024, Plaintiff improperly applied a 92% discount on a pavilion rental for an employee, which violated BREC's rental policy. R. Doc. 13-2, p. 31 (Internal Audit timeline), R. Doc. 13-1, p. 3, R. Doc. 13-3, p. 2, ¶ 6, and R. Doc. 13-2, p. 2, ¶ 8, attaching R. Doc. 13-2, pp. 20-21 (BREC policy regarding facility rentals). Although BREC includes the discounted facility rental as part of its argument regarding the grounds for Burg's suspension (R. Doc. 13-1, p. 3), this policy violation is not specifically listed as a basis for his suspension in the December 9, 2024 letter Burg was provided. R. Doc. 13-2, p. 26.

[21] Rather, in his post-suspension emails, Plaintiff repeatedly asserted objections to BREC not following its policies in connection with his suspension; whether the violations were "professional action items rather than safety concerns" such that unpaid suspension was inappropriate; Internal Audit conducting the investigation; Internal Audit's failure to question Plaintiff; Barrett's reinstatement to work; Plaintiff's camera access being taken away; and Plaintiff not being

According to Plaintiff, BREC's Human Resources Director, Darlene Jarvis ("Jarvis"), contacted Plaintiff to report for a meeting on December 6, 2024; however, Plaintiff was on personal leave that day, so the meeting was rescheduled for December 9, 2024 to accommodate Plaintiff.[22] Jarvis met with Plaintiff on December 9, 2024 and advised him that BREC was suspending him for five days without pay effective immediately, pending final investigation and disciplinary action for "P-Card Mismanagement and Lack of Oversight" and "Inadequate Supervisory Oversight of designated area."[23] Plaintiff's suspension letter instructed him to return to work on December 16, 2024.[24] Plaintiff alleges that when he reported back to work "no investigation findings were available and Plaintiff was told to return to work."[25] On December 19, 2024, Plaintiff received his full paycheck; however, on his January 9, 2025 paycheck, Plaintiff's wages were reduced to reflect the five-day suspension without pay.[26]

Exhibits attached to Plaintiff's Affidavit, unobjected to by Defendant, reflect that after Plaintiff returned to work from the suspension, but prior to his ultimate departure from BREC, Plaintiff sent emails to Jarvis, Wilson, Boykin and/or the BREC Commissioners regarding his suspension without pay, the Internal Audit investigation, and BREC's policies.[27] On March 25,

---

given access to the audit findings and report. *See, e.g.,* R. Doc. 40, pp. 3-4 and R. Doc. 40-3, pp. 9-10, 26-28, 35-36 (emails from Plaintiff that are described in more detail, below).

[22] R. Doc. 1, ¶ 11.

[23] R. Doc. 13-3, ¶¶ 6-7, citing R. Doc. 13-2, p. 2, ¶ 10, which has attached R. Doc. 13-2, p. 26 (December 9, 2024 suspension letter to Plaintiff) and pp. 27-31 (Final Report and Internal Audit Timeline). *See* R. Doc. 40, p. 2; R. Doc. 40-2, ¶ 3; R. Doc. 40-3, p. 2 (December 9, 2024 suspension letter to Plaintiff).

[24] R. Doc. 13-2, p. 26 and R. Doc. 40-3, p. 2.

[25] R. Doc. 1, ¶ 13 (Plaintiff actually says he returned to work on December 15, 2024, but that appears to be a typographical error).

[26] R. Doc. 40-3, p. 67 (Plaintiff's January 9, 2025 BREC paystub for the pay period ending January 3, 2025 (with an incorrectly labeled date of April 2025)).

[27] R. Doc. 40-2, ¶¶ 8-11 and *see* R. Doc. 40-3, p. 10 (December 9, 2024 email from Plaintiff to Wilson); p. 9 (December 17, 2024 email from Plaintiff to Wilson); p. 23 (January 14, 2025 email from Plaintiff to Wilson, recapping their meeting of the same day); and, pp. 26-27 (March 24, 2025 email from Plaintiff to the BREC Commissioners). *See also* R. Doc. 1, ¶¶ 14, 16-17.

2025, Plaintiff received Boykin's email response to Plaintiff's email from the prior day.[28] Boykin's email informed Plaintiff that his five-day suspension was upheld, and that, pursuant to Section 8 of Chapter 10, disciplinary matters other than termination and demotion are not subject to appeal.[29] On April 21, 2025, BREC received a letter from Plaintiff, dated April 16, 2025, with the subject line "Constructive Resignation," in which Plaintiff stated his "formal resignation" from employment.[30]

On May 20, 2025, Plaintiff filed suit in this Court alleging BREC violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, *et seq.*,[31] when it deducted from his wages for the five-day suspension and failed to consistently apply its policies, which "undermined the integrity of Plaintiff's exempt status," and additionally, when it engaged in retaliation, which resulted in Plaintiff's constructive discharge.[32] On July 2, 2025, BREC filed its Answer and the Motion, seeking dismissal of all Plaintiff's claims, with prejudice.[33] After a flurry of filings by Plaintiff in response (many of which are duplicative, including two Opposition memoranda),[34] a conference was conducted with the parties to discuss, among other things, Plaintiff's request to file an

---

[28] R. Doc. 1, ¶¶ 16-18.

[29] R. Doc. 40-3, p. 33 (March 25, 2025 email from Boykin to Plaintiff, which appears to have Chapter 10 attached) and *see id.* at pp. 35-36 (March 25, 2025 Plaintiff's email response sent to the BREC commissioners, Wilson, Jarvis and Boykin).

[30] R. Doc. 13-3, ¶ 8, citing R. Doc. 13-2, p. 2, ¶ 11 (attaching R. Doc. 13-2, pp. 32-33 (Plaintiff's resignation letter)), and *see* same at R. Doc. 40-3, pp. 47-48 and R. Doc. 40-2, ¶ 14.

[31] The Court has federal question subject matter jurisdiction over Plaintiff's claims.  Plaintiff paid the filing fee. R. Doc. 1. A Limited Scheduling Order for FLSA cases was issued, ordering Plaintiff to answer the Court's interrogatories, and the parties to exchange certain information and discuss settlement. Discovery was otherwise stayed until the filing of the parties' Status Report. R. Doc. 10.

[32] R. Doc. 1, pp. 4-5.  Plaintiff's Affidavit also attached a March 31, 2025 letter from the Wage and Hour Division of the United States Department of Labor ("DOL"), declining to investigate Plaintiff's claims. R. Doc. 40-3, pp. 24-25.

[33] R. Doc. 13 and *see* R. Doc. 20 (First Reply).

[34] *See, e.g.,* R. Docs. 14-17, 22.

amended Opposition, which was granted.[35] Accordingly, Plaintiff filed his amended Opposition,[36]

along with his Amended Statement of Disputed Material Facts and his Affidavit and exhibits.[37]

BREC was granted leave to file its Second Reply, in response to Plaintiff's amended Opposition.[38]

BREC also sought leave to file its Reply to Plaintiff's Amended Statement of Disputed Material

Facts, which will be granted.[39]

---

[35] R. Docs. 38-39. Plaintiff sought to file the amended pleadings to address deficiencies raised by BREC. R. Doc. 22. The Court also addressed Plaintiff's claim that he had not been properly served with BREC's filings (*see, e.g.,* R. Docs. 25, 27, 30-34), which BREC resolved before the conference.

[36] Plaintiff's arguments regarding BREC's claim that Plaintiff was grossly negligence in relation to sand filters, kitchen cleanliness and system maintenance, and duties that he did not owe post-resignation, are not considered because they relate to allegations in BREC's lawsuit against Plaintiff in state court, which are not before this Court. R. Doc. 40, pp. 9-10. Furthermore, six days after filing his amended Opposition (R. Doc. 40), Plaintiff filed another amended Opposition (R. Doc. 44), without seeking leave of Court, that is nearly the same as the one filed six days before. Plaintiff's second-filed amended Opposition (R. Doc. 44) will not be considered because Plaintiff was granted leave to file only one amended Opposition.

[37] R. Doc. 40, *et seq.* BREC did not lodge specific objections to any of Plaintiff's Affidavit exhibits, some of which are also referenced in the "Statement of Undisputed and Disputed Material Facts" in Plaintiff's Opposition. Rather, (and aside from noting that Plaintiff's introduction of certain documents may be in violation of BREC's Technical/Information Policy ((*see* R. Doc. 56, p. 1, n.1), which violation is not at issue in this proceeding and therefore not addressed), BREC admits that Plaintiff's facts "rely on documents [the Affidavit exhibits] which are themselves the best evidence of their content." R. Doc. 56, p. 1. The majority of Plaintiff's Affidavit exhibits, (as well as Boykin's Affidavit exhibits), including but not limited to, BREC job descriptions, policies, and paystubs, and correspondence exchanged between the parties, will be considered as the exhibits appear reliable, and are authenticated and admissible under Federal Rules of Evidence ("FRE") 803(5), (6), (8) as recorded recollections, business records and/or public records. However, two exhibits will not be considered, which are, according to Plaintiff, two purported transcripts of meetings between Plaintiff and Jarvis and Plaintiff and Wilson. Both transcripts state that they were "Transcribed by TurboScribe.ai." R. Doc. 40-3, pp. 3-8, 12-22. These transcripts are hearsay per FRE 801 and are unreliable and unauthenticated per FRE 901 because it is not clear how the meetings were recorded and how and where the transcripts were generated. *See King Fisher Marine Serv., Inc. v. M/V SOCOL 2,* No. 00-2439, 2001 WL 1911437, at *3 (S.D. Tex. Sept. 26, 2001) ("Evidence raised in support of, or attacking, a motion for summary judgment is subject to the same rules that govern the admissibility of evidence at trial. *Rushing v. Kansas City Southern Railway Co.,* 185 F.3d 496, 504 (5th Cir. 1999). 'Material that is inadmissible will not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial and continuing the action would be useless." *Geiserman v. MacDonald,* 893 F.2d 787, 793 (5th Cir. 1990) (quoting Wright & Miller, Federal Practice And Procedure § 2727 (1983))."). The transcripts are particularly problematic because they were generated by artificial intelligence, with no indication of independent verification, circumstances which have been recognized to result in unreliable information. *See e.g., In re Snowflake, Inc., Data Sec. Breach Litig.,* No. 3126, 2026 WL 318355, at *2 (U.S. Jud. Pan. Mult. Lit. Feb. 5, 2026) ("Artificial intelligence is known to result in ... fictional or hallucinatory citations .... [B]ecause artificial intelligence synthesizes many sources with varying degrees of trustworthiness, reliance on artificial intelligence without independent verification renders litigants unable to represent to the Court that the information in their filings is truthful.") (citing *See Reilly v. Connecticut Interlocal Risk Mgmt. Agency,* No. 25-630 [sic, 25-640], 2025 WL 1726366, at *2-3 (D. Conn. June 20, 2025)) (internal quotation marks and citation omitted).

[38] R. Doc. 56.

[39] R. Doc. 49-3. *See* n.6, *supra.*

7

Plaintiff then filed his Motion for Leave to File Sur-Reply,[40] seeking to respond to an argument that Plaintiff asserted was raised for the first time in BREC's Second Reply, *i.e.*, that the five-day deduction from Plaintiff's pay was permitted pursuant to 29 C.F.R. § 541.602(a)(1) because Plaintiff performed no work the entire week of December 9, 2024.[41] BREC actually raised this argument in its First Reply, and therefore, it could have been addressed by Plaintiff in his amended Opposition.[42] Setting that aside, because it is recommended that BREC's 29 C.F.R. § 541.602(a)(1) argument not be considered as it was asserted for the first time in reply,[43] it is further recommended that Plaintiff's Motion for Leave to File Sur-Reply be denied because the rest of the Sur-Reply reiterates prior arguments or addresses matters that are not pertinent to the resolution of the instant Motion.[44] The matter is fully briefed and oral argument is not necessary.

---

[40] R. Doc. 54.

[41] R. Doc. 56, p. 2.

[42] In the Motion, BREC asserted that the five-day deduction was permitted pursuant to 29 C.F.R. § 541.602(b)(5), which allows deductions for unpaid disciplinary suspensions. R. Doc. 13-1, pp. 3-4. Then, it its First Reply, BREC newly asserted the 29 C.F.R. § 541.602(a)(1) argument. R. Doc. 20, p. 4 ("In fact, because the suspension was for a full workweek, Plaintiff was not entitled to any pay, regardless of the reasons for the suspension. This is because, 'Exempt employees need not be paid for any workweek in which they perform no work.' 541.602(a)(1)."). Defendant's argument regarding 29 C.F.R. § 541.602(a)(1) was raised before Plaintiff filed his amended Opposition, and Plaintiff had the opportunity to address it there. BREC simply re-asserts the 29 C.F.R. § 541.602(a)(1) argument in its Second Reply. R. Doc. 56, p. 2.

[43] R. Doc. 56, *see* the middle of p. 2, and the bottom of p. 4 to the middle of p. 5. *See Georgia Firefighters' Pension Fund v. Anadarko Petroleum Corp.,* 99 F.4th 770, 774 (5th Cir. 2024) ("Ordinarily, sur-replies are 'heavily disfavored,' and the decision to allow a sur-reply lies within the district court's discretion. *Butler v. S. Porter*, 999 F.3d 287, 297 (5th Cir. 2021) (internal quotation omitted). But when a party raises new arguments or evidence for the first time in a reply, the district court must either give the other party an opportunity to respond or decline to rely on the new arguments and evidence.") (emphasis added).

[44] Plaintiff's request in the Sur-Reply for discovery pursuant to Fed. R. Civ. P. ("Rule") 56(d) of payroll and disciplinary information for other BREC employees is not properly asserted because the request was not made in Plaintiff's Affidavit or via subsequent affidavit or declaration as required by the Rule. The request is also not warranted because, as explained below, Plaintiff has not shown that he was personally subjected to an improper deduction resulting in the loss of his exempt status. *See* n.89.

8

## II.    LAW AND ANALYSIS

### A.  Legal Standards for Summary Judgment and the FLSA

*Summary Judgment*

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.[45] "A 'material' fact is one that might affect the outcome of the suit under governing law,' and a fact issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[46] A party moving for summary judgment must explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show there is no genuine issue of material fact.[47] If the moving party carries its burden of proof, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor, *i.e.*, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[48] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[49] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to

---

[45] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

[46] *McCullough v. Wright*, 824 Fed.Appx. 281, 284 (5th Cir. Sept. 9, 2020), quoting *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (some internal quotations omitted).

[47] *Celotex Corp.*, 477 U.S. at 322-23.

[48] *Anderson*, 477 U.S. at 249 (citation omitted).

[49] *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).

that party's case and on which that party will bear the burden of proof at trial.[50] Summary judgment

is appropriate in any case where the evidence is so weak or tenuous on essential facts that the

evidence could not support a judgment in favor of the non-moving party.[51] In resolving a motion

for summary judgment, the court must review the facts and inferences in the light most favorable

to the non-moving party, and the court may not evaluate the credibility of witnesses, weigh the

evidence, or resolve factual disputes.[52]

*The FLSA*

"The FLSA provides that employees shall not work more than forty hours per work week

unless they are compensated at one and a half-time their regular rate of employment."[53] "The FLSA

also exempts workers from its overtime-pay guarantee protection, such as employees that are

employed 'in a bona fide executive, administrative, or professional capacity.'"[54] The Department

of Labor has been delegated the authority of defining those terms, and "[u]nder that authority, the

Department … considers duties, method of payment, and salary."[55] With regard to the salary basis

component, which is relevant here,[56] "[a]n employee will be considered to be paid on a 'salary

basis' [] if the employee regularly receives each pay period on a weekly, or less frequent basis, a

predetermined amount constituting all or part of the employee's compensation, which amount is

not subject to reduction because of variations in the quality or quantity of the work performed."[57]

Subject to certain exceptions, "an exempt employee must receive the full salary for any week in

---

[50] *Celotex Corp.*, 477 U.S. at 322-23.

[51] *Little*, 37 F.3d at 1075 (citation omitted).

[52] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

[53] *Venable v. Smith Int'l, Inc.,* 117 F.4th 295, 299 (5th Cir. 2024), citing 29 U.S.C. § 207(a)(1).

[54] *Venable,* 117 F.4th at 299 (5th Cir. 2024) citing 29 U.S.C. § 213(a)(1).

[55] *Texas v. United States Dep't of Labor,* 756 F.Supp.3d 361, 382 (E.D. Tex. 2024).

[56]  Plaintiff does not challenge his exempt status on the basis of his weekly rate of pay or his duties.

[57] 29 C.F.R. § 541.602(a)(1).

which the employee performs any work without regard to the number of days or hours worked."

However, "[e]xempt employees need not be paid for any workweek in which they perform no work.[58] One such exception is found at 29 C.F.R. § 541.602(b)(5), which provides:

> Deductions from pay of exempt employees may be made for unpaid disciplinary suspensions of one or more full days imposed in good faith for infractions of workplace conduct rules. Such suspensions must be imposed pursuant to a written policy applicable to all employees. Thus, for example, an employer may suspend an exempt employee without pay for three days for violating a generally applicable written policy prohibiting sexual harassment. Similarly, an employer may suspend an exempt employee without pay for twelve days for violating a generally applicable written policy prohibiting workplace violence.

29 C.F.R. § 541.603 explains the effect of improper deductions. Subsection (a) provides that "[a]n employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." That provision sets out factors to consider when determining whether an employer has an actual practice of making improper deductions.[59]

### B. There is No Genuine Issue of Material Fact that Plaintiff Did Not Lose His Exempt Status When He Was Suspended for Five Days Without Pay

In his Complaint, Plaintiff alleged that he was a full-time, salaried, exempt employee, and the five-day deduction of pay from his January 9, 2025 paycheck, for the week that he was on suspension beginning on December 9, 2024, violated the salary basis test under 29 C.F.R. § 541.602(a)-(b) and constituted an unlawful pay practice under 29 U.S.C. § 206.[60] Plaintiff also

---

[58] *Id.*

[59] 29 C.F.R. § 541.603(b) provides that, if the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions.

[60] R. Doc. 1, ¶ 24.

alleged that BREC failed to consistently enforce its disciplinary policies, including Chapter 10, by refusing to permit Plaintiff to file a complaint and/or appeal. Plaintiff asserted that BREC's failure to consistently enforce its disciplinary policies is a factor to be considered under 29 C.F.R. § 541.603(a) in determining if BREC has an actual practice of making improper deductions, and therefore, has bearing on whether Plaintiff lost his exempt status.[61]

In the Motion, BREC asserts that Plaintiff was suspended for five days without pay for failing to sufficiently supervise his subordinate employees to prevent them from violating timekeeping policies and committing payroll fraud, and for failing to review and approve P-card statements. BREC contends that the deduction was permitted pursuant to 29 C.F.R. §541.602(b)(5) as an unpaid disciplinary suspension of one or more full days imposed in good faith for Plaintiff's infractions of workplace conduct rules, pursuant to a written policy applicable to all employees; here, Chapter 10, paragraphs 1 and 2, which provide, in pertinent part:

> **Disciplinary Actions.**
> All BREC employees are employed "at will" and may be terminated at any time with or without cause. The employee handbook and disciplinary actions are established as guidelines for employee performance. A supervisor may take any appropriate action(s) to discharge, suspend, demote, reduce in pay, reassign or reprimand an employee for cause.
>
> **Suspensions. (rev. 11/03)**
> a)  Any employee who is suspended without pay shall be so notified by their supervisor on or before the effective date of the suspension. The Human Resources Department will be notified, and a record shall be made of such suspension.[62]

BREC further contends that Plaintiff cannot show that BREC has an actual practice of making improper deductions under 29 C.F.R. § 541.603(a).[63]

---

[61] R. Doc. 1, ¶ 25, citing 29 C.F.R. § 541.603(a) (*see* definition, above).

[62] R. Doc. 13-1, pp. 3-4 citing, R. Doc. 13-2, p. 4.

[63] R. Doc. 13-1, p. 4.

Plaintiff contends that there is a genuine issue of material fact as to whether the reasons for his suspension were based on performance issues rather than violations of workplace conduct rules. Plaintiff relies on the Eleventh Circuit Court of Appeal's *Watkins v. City of Montgomery, Alabama* opinion, which relied on the DOL's preamble to the regulations, when finding that "workplace conduct" in 29 C.F.R. § 541.602(b)(5) "is not to be construed expansively" and covers only "serious workplace misconduct like sexual harassment, violence, drug or alcohol violations, or violations of state or federal laws…[] Critically, it 'was not meant to apply to performance or attendance issues."[64] Plaintiff alleges that there is a genuine issue of material fact as to whether lack of oversight resulting in payroll fraud is serious misconduct, or rather, a performance or mismanagement issue, which is excluded from permissible unpaid suspensions.[65] Plaintiff contends that his actions involved performance issues because Jarvis allegedly told him during his suspension meeting that "PCARD mismanagement and lack of oversight is not a specific policy. It's an action that you perform, and inadequate supervisory oversight, again, that's an action you perform. It's not a policy violation, but it is dereliction in the job performance of your duties."[66]

Plaintiff further contends that the retroactive deduction, while not specifically addressed in the FLSA, is a practice that has been found to undermine the salary basis test if it demonstrates an employer's intent to not pay its employees on a salary basis, which is a question of material fact.[67] Plaintiff additionally argues that whether BREC has an actual practice of making improper

---

[64] R. Doc. 40, p. 5, citing *Watkins v. City of Montgomery, Ala.,* 775 F.3d 1280, 1284 (11th Cir. 2014) (relying on the DOL's preamble regarding the implementation of this provision in 29 C.F.R. § 541.602(b)(5). *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122-01 (April 23, 2004)).

[65] R. Doc. 40, p. 6.

[66] R. Doc. 40, pp. 2-3, ¶ 4.

[67] R. Doc. 40, p. 6, citing *Balgowan v. State of New Jersey,* 115 F.3d 214 (3rd Cir. 1997).

deductions is also a question of material fact. Plaintiff alleges that he submitted a public records request for similar disciplinary actions against other exempt employees, but BREC denied the request, contending that the requested information is confidential.[68]

BREC replies that Plaintiff's suspension was based on serious misconduct, rather than mere performance issues, and thus came within the ambit of 29 C.F.R. § 541.602(b)(5).[69] Further, BREC contends that courts in this Circuit hold that the focus is on how employees are actually paid, not what employer policies require regarding deductions. BREC argues that Plaintiff has not provided any support for the allegation that a single instance of an improper deduction can establish an actual practice under 29 C.F.R. § 541.603(a). However, BREC's First Reply cites several cases holding otherwise.[70]

Plaintiff's FLSA claim centers entirely around whether his five-day unpaid suspension violated the salary basis test such that he lost his exempt status. Here, there is no genuine issue of material fact to dispute that Plaintiff's employment satisfied the "salary basis" component of an FLSA exemption, which was not lost based on his unpaid suspension. As all parties recognize, 29 C.F.R. § 541.602(b)(5) permits unpaid suspensions, of one or more full days, imposed in good faith pursuant to a workplace policy[71] applicable to all employees for infractions of workplace conduct rules, which applies to serious misconduct, per the DOL.[72] Here, BREC suspended

---

[68] R. Doc. 40, p. 6 and *see* R.Doc. 40-3, pp. 49-53 (Plaintiff's public records request and BREC's response).

[69] R. Doc. 56, p. 3.

[70] R. Doc. 56, pp. 3-4, citing R. Doc. 20, pp. 6-7.

[71] The DOL explained that, "the written policy need not include an exhaustive list of specific violations that could result in a suspension, or a definitive declaration of when a suspension will be imposed. The written policy should be sufficient to put employees on notice that they could be subject to an unpaid disciplinary suspension." 69 Fed. Reg. at 22178.

[72] The parties did not cite to a Fifth Circuit decision interpreting "serious misconduct" in 29 C.F.R. § 541.602(b)(5), nor was one found.

Plaintiff for five days without pay[73] pursuant to Chapter 10,[74] which provides that employees can be suspended without pay for cause.[75] BREC found cause to suspend Plaintiff without pay because Plaintiff's supervision over two subordinate employees was deficient, resulting in payroll fraud and timekeeping violations, and additionally, Plaintiff failed to review Barrett's P-card statements, as required. Plaintiff does not dispute either of these findings. Instead, Plaintiff argues that his deficiencies were not "conduct" issues, but rather "performance" issues, based on Jarvis's alleged statements, but Jarvis's characterization, even if true, is not controlling. Internal Audit's investigation revealed payroll fraud by Barrett, and timekeeping violations by Durand. Plaintiff was responsible for supervising these employees.[76] Internal Audit also found that Plaintiff failed to review Barrett's P-Card statements as required by the P-Card policy.[77] As BREC is a political subdivision of the State, employee payroll fraud and an agency's failure to conduct required financial reconciliations are concerning misuses of public funds. The payroll fraud and

---

[73] While this issue need not be decided in light of the discussion, below, Plaintiff's attendance at a short meeting on the morning of his first day of suspension to tell him he was suspended should not be considered work from a common sense standpoint or under Plaintiff's particular circumstances, because the purpose of the meeting was to notify Plaintiff of his suspension and instruct him to *not* work, and the meeting only took place that day because Plaintiff was on personal leave the day the meeting was supposed to take place.

[74] Plaintiff challenges the version of Chapter 10 relied on by BREC by contending that an undated and incomplete version of it was emailed to him, "indicating potential inaccessibility of the current employee handbook on the employer intranet." R. Doc. 40-2, ¶ 12. "Potentially inaccessible" is speculative, and Plaintiff was a supervisor who was, per his job description, responsible for having knowledge of BREC Rules and Regulations, and who had already been told in 2018 that he was held to a higher standard because of his responsibility for enforcing policies and procedures. R. Doc. 40-3, p. 58; R. Doc. 13-2, p. 22. Plaintiff also contends that he was informed he could not appeal the suspension per the current Chapter 10 because only terminations and demotions are subject to appeal. R. Doc. 13-2, p. 7 and *see* R. Doc. 40-3, p. 33. Plaintiff argues that the denial of appeal rights contradicts another version of Chapter 10, which would permit an appeal, as well as his suspension letter, which also referenced an appeal, and both these issues raise a factual dispute about his appeal rights and due process. R. Doc. 40-1, p. 5, R. Doc. 40-3, pp. 39-43, and R. Doc. 13-2, p. 26. Plaintiff's dispute regarding his appeal rights, including his allegation that his suspension letter mistakenly advised that he did not have the right to an appeal, does not have bearing on the propriety of his unpaid suspension under the FLSA, and Plaintiff did not assert a claim for denial of due process in his Complaint. Plaintiff also states that he did appeal. R. Doc. 40, ¶ 9; R. Doc. 40-2, ¶ 11.

[75] R. Doc. 13-2, p. 4; R. Doc. 40-3, p. 39. Both versions of Chapter 10 submitted by the parties have the same provisions regarding Disciplinary Actions and Suspensions.

[76] R. Doc. 13-2, pp. 27-31 and R. Doc. 40-3, p. 59 (listing of Plaintiff's job duties as "oversees… the day to day operation including but not limited to…. performance of employees").

[77] R. Doc. 40-3, p. 57 (P-Card policy, which although unsigned, was introduced by Plaintiff, and states: "I agree to review and reconcile transactions timely….").

unreviewed P-Card statements resulting from Plaintiff's lack of supervision could be fairly characterized as "gross inefficiency," and/or involvement in "abuse or misuse of BREC property," both listed under BREC's Rules and Regulations, signed by Plaintiff, as "Forbidden **Conduct**."[78] BREC has provided evidence that it suspended Plaintiff with a good faith belief in his failure to comply with its Rules and Regulations, applicable to all employees.[79] Thus, the unpaid suspension was permissible per 29 C.F.R. § 541.602(b)(5) and did not result in loss of Plaintiff's exempt status.[80] As noted in *Watkins,* the DOL also stated that the addition of the unpaid suspension exception "will permit employers to hold exempt employees to the same standards of conduct as that required of their nonexempt workforce,"[81] and the exception "also takes into account…that a growing number of laws governing the workplace have placed increased responsibility and risk of liability on employers for their exempt employees' conduct,"[82] which seems particularly applicable to misconduct involving payroll fraud occurring in a public agency.

However, even if there is a fact question as to whether Plaintiff was suspended for serious misconduct, that does not create a genuine issue of material fact that Plaintiff lost his salaried

---

[78] R. Doc. 13-2, p. 19 (emphasis added).

[79] R. Doc. 13-2, ¶¶ 4, 10; R. Doc. 13-2, pp. 26-31.

[80] *See Richardson v. Regeis Care Center, LLC*, No. 16-3538, 2017 WL 432806, at *3 (S.D.N.Y. 2017) (affirming summary judgment for employer, finding no issue of material fact that employee was suspended without pay for violation of workplace conduct rules per the employer's policies such that the suspension did not result in loss of exempt status); *Wetzel v. Town of Orangetown*, No. 06 -15190, 2013 WL 1120026, at *6 (S.D.N.Y. Mar. 18, 2013) (affirming summary judgment for employer, finding that the docking of the employee's vacation days during the disciplinary hearing process per employer's policy was permissible and did not result in loss of exempt status); *Parmar v. Safeway*, Inc., No. 10–421, 2011 WL 888238, at *5 (W.D. Wash. Mar. 14, 2011) (affirming summary judgment, finding that the employee/pharmacy manager's suspension without pay, pursuant to employer's policy, for failing to notify a customer of her subordinate's mistake in filling a prescription was permissible and did not defeat salaried status); *Abramo v. City of New York,* 54 Fed.Appx. 708 (2nd Cir. 2003), and aff'd sub nom, *Abramo v. City of New York*, 54 Fed.Appx. 708 (2nd Cir. 2003) (granting summary judgment to the employer, finding that conduct resulted in an infraction of a safety rule of major significance, which permitted deductions under 29 C.F.R. § 541.602(4)). Furthermore, the fact that the deduction was retroactive is not precluded by 29 C.F.R. § 541.602(b)(5). Plaintiff's reliance on *Balgowan,* 115 F.3d 214*,* to the contrary fails because *Balgowan* does not address retroactive deductions (as BREC points out). R. Doc. 56, p. 4.

[81] 775 F.3d at 1284, citing 69 Fed. Reg. at 22177.

[82] 69 Fed. Reg. at 22177.

exemption, as Plaintiff contends, because a five-day suspension without pay[83] over the course of Plaintiff's seven year period of employment is isolated, and not an "actual practice" of improperly making deductions.[84]

29 C.F.R. § 541.603(a) provides, in pertinent part: "An employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis."[85] The factors to consider when determining whether an employer has an actual practice of making improper deductions include, but are not limited to: the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions.[86] However, the "section shall not be construed in an unduly technical manner so as to defeat the exemption."[87]

Plaintiff alleges one instance of an improper deduction that affected one pay period in January 2025. As set forth in BREC's First Reply, multiple courts have squarely held that isolated

---

[83] Plaintiff received a three-day suspension without pay in 2018 for violating BREC's policies by making inappropriate comments and inappropriate contact with female staff. R. Doc. 13-1, p. 1 and R. Doc. 13-2. However, Plaintiff does not complain about this suspension and acknowledges that it is not relevant to his claims. R. Doc. 40-1, p. 3. Notably, and as referenced above, Plaintif's 2018 disciplinary letter explicitly stated: "As a supervisor [] with BREC you are held to a higher standard for following and enforcing policies and procedures provided." R. Doc. 13-2, p. 22.

[84] *Kennedy v. Commonwealth Edison Co*., 410 F.3d 365, 372 (7th Cir. 2005) ("Identifying a few random, isolated, and negligible deductions is not enough to show an actual practice or policy of treating as hourly the theoretically salaried.").

[85] 29 C.F.R. § 541.603(a).

[86] 29 C.F.R. § 541.603(a).

[87] 29 C.F.R. § 541.603(e).

deductions, such as the one in this case, do not result in an employee losing his exempt status, even if the deductions are improper.[88] For example, in *Ellis v. J.R.'s Country Stores, Inc.*,[89] the court held:

> [t]he Company's one-time improper deduction from Ms. Ellis's pay, 'taken under unusual circumstances [, would] not defeat [Ms. Ellis's] salaried status.' … (citing Auer, 519 U.S. at 460–61, 117 S.Ct. 905 [one improper deduction not a practice] [full citation below]). This is hardly an unusual conclusion in FLSA jurisprudence, and it is the correct result here. *See, e.g., Carpenter v. City & Cnty. of Denver, Colorado*, 115 F.3d 765, 767 (10th Cir. 1997) (noting with approval that 'although there were two cases of alleged deductions, the [district] [c]ourt specifically recognized that such one time deductions under unusual circumstances will not oust exempt status and may be remedied'); *see also Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 372 (7th Cir. 2005) (discussing subsection (a) and its predecessor regulation, and concluding that '[i]dentifying a few random, isolated, and negligible deductions is not enough to show an actual practice or policy of treating as hourly the theoretically salaried.... This means that these isolated instances of deductions do not create a genuine issue of fact about the proper characterization of the plaintiffs' positions.'); *Block v. City of Los Angeles*, 253 F.3d 410, 415 (9th Cir. 2001) ('In some cases, the number of [employer] suspensions alone may be sufficient indicia of the employer's intent to resolve the 'actual practice' determination. For example, the number may be so small that there would be no way to say that the employer meant to treat an entire class of employees as hourly rather than salaried by virtue of one or two isolated suspensions.'); *Aiken v. City of Memphis, Tennessee*, 190 F.3d 753, 762 (6th Cir. 1999) ('The evidence shows that only one captain ever faced a deduction in pay. Thus, plaintiffs cannot demonstrate an actual practice of applying such deductions to captains.'").[90]

The Eastern District of Missouri has recently held similarly:

---

[88] *See* R. Doc. 20, p. 6.

[89] 779 F.3d 1184, 1195 (10th Cir. 2015)

[90] *See also Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 522 (S.D.N.Y. 2013) ("Even allowing for disputes of fact as to whether the suspensions were made in good faith, three suspensions among five employees over a period of four years is, in this case, too isolated an occurrence to suggest Defendants had an 'actual practice' of making unlawful deductions from the Plaintiffs' salaries."); *Karropoulos v. Soup du Jour, Ltd.*, 128 F.Supp.3d 518, 529 (E.D.N.Y. 2015) (finding three exemptions isolated and not an actual practice, and holding: "Thus, a plaintiff asserting that his salary was 'subject to reduction' must allege more than isolated incidents of deductions in order to create a genuine issue of material fact as to whether his employer intended him to be an hourly employee.").

> Conners' claim fails because he has presented evidence at most of isolated improper deductions [in three pay periods] affecting only him for a period of less than one month. Federal regulations require more. They require systemic or widespread deductions in pay. As the Tenth Circuit has explained, the relevant regulations speak in the 'plural' rather than the singular ("deductions" and "employees"); they require an "actual practice"—that is, "habitual[ ]" or "repeated" conduct."[91]

The remaining factors are not reached, because Plaintiff lacks a viable claim where he complains of only one deduction affecting one pay period.[92] Here, there is no genuine issue of material fact that Plaintiff's receipt of one allegedly improper deduction did not result in an "actual practice" by BREC of making improper deductions.

As the unpaid suspension was permissible per 29 C.F.R. § 541.602(b)(5), and as Plaintiff cannot show that one deduction affecting one pay period is an actual practice of improper deductions, Plaintiff did not lose his exempt status when he was suspended for five days without pay and Plaintiff's FLSA claim on this ground fails, such that summary judgment in favor of BREC on this claim is proper.

---

[91] *Conners v. Env't Operations, Inc.*, No. 23-1096, 2025 WL 2996256, at *3 (E.D. Mo. Oct. 24, 2025) (citing *Ellis*, 779 F.3d at 1196). *See also, Cash v. Cycle Craft Co., Inc.*, 508 F.3d 680, 684 (1st Cir. 2007) (affirming summary judgment for employer, concluding that "two aberrant paychecks out of the approximately 50 that [the plaintiff] received do not amount to an actual practice."); *Mathews v. Bronger Masonry, Inc.*, 772 F.Supp.2d 1004, 1013 (S.D. Ind. Feb. 18, 2011) ("Given that [the plaintiff] has identified only a single incident that followed as least one infraction on the part of [the plaintiff] arguably warranting discipline, there is surely no basis for a finding that [the employer] had '[a]n actual practice of making improper deductions demonstrate[ing] that [the employer] did not intend to pay [the plaintiff] on a salary basis,' pursuant to 29 C.F.R. § 541.603(a).").

[92] *See, e.g., Ellis,* 779 F.3d at 1194 (affirming the district court's holding regarding the third and fourth factors, and finding, "[W]ith respect to the number and geographic location of additional employees whose salary was improperly reduced, the Court stayed proceedings on that issue because, having experienced only one allegedly improper deduction, Ellis appeared to lack a viable claim, which could not be salvaged by recourse to evidence relating to other individuals.... [F]or substantially the same reason, the number and geographic location of managers responsible for taking the improper deductions does not support Ellis's position. No such 'deductions' (plural), occurred—only the singular deduction that Ellis acknowledges."). The *Ellis* court went on to note that other courts have examined as few as one of the five factors with particular focus on the first factor. *Id.* at 1195 (collecting cases). Plaintiff's request for information regarding suspensions of other employees, either via public records requests or discovery, is not warranted. The *Ellis* court found no error with the district court's denial of the plaintiff's 56(d) motion on the third and fourth factors because her claim of only one improper deduction "could not be salvaged by recourse to evidence related to other individuals."

19

**C. There is No Genuine Issue of Material Fact that Plaintiff Was Not Retaliated Against For Engaging in Conduct Protected Under the FLSA**

The Complaint alleged that BREC retaliated against Plaintiff in violation of 29 U.S.C. § 215(a)(3) through the following actions: taking away Plaintiff's access to the camera surveillance system; failing to support Plaintiff's investigation of Barrett's payroll fraud; subjecting Plaintiff to Barrett's grievance; denying Plaintiff procedural fairness in connection with Internal Audit's investigation of Plaintiff, including in reprimanding and suspending Plaintiff; and, failing to allow Plaintiff to file complaints and internal grievances, "including his attempt to invoke federal wage protections." Plaintiff alleged that, through the foregoing, he was subjected to a retaliatory and hostile work environment, which culminated in his forced resignation, *i.e.*, constructive discharge.[93]

The Motion contends that, aside from the constructive discharge, none of the above actions is a demotion, reduction in pay, or a transfer, *i.e.*, a materially adverse action, so Plaintiff cannot assert a claim for retaliation as to those acts. Defendant argues that the constructive discharge claim also fails because the facts do not show "working conditions [] so intolerable that a reasonable person in [Plaintiff's] position would have felt compelled to resign."[94] Defendant alleges that consideration of the following factors are relevant, singly or in combination:

> (1) [D]emotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status].[95]

---

[93] R. Doc. 1, pp. 4-5; R. Doc. 13-1, p. 4.

[94] R. Doc. 13-1, p. 5, citing *Pennsylvania State Police v. Suders,* 542 U.S. 129, 141 (2004).

[95] R. Doc. 13-1, p. 5, citing *Haley v. Alliance Compressor LLC,* 391 F.3d 644, 649 (5th Cir. 2004) (citing *Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 566 (5th Cir. 2001)).

According to BREC, Plaintiff fails to satisfy the objective test for constructive discharge because the actions that Plaintiff alleges BREC committed would not have made a reasonable employee in Plaintiff's position resign. In support, BREC relies on *Brown v. Bunge* (affirming summary judgment for the employer, finding that employee's demotion and lessened job responsibilities did not lead to constructive discharge)[96] and *Boze v. Branstetter* (poor performance evaluation, failure to promote and loss of responsibilities like a demotion did not lead to a constructive discharge).[97]

Plaintiff argues that he engaged in protected activity when he complained about the unpaid suspension to BREC both verbally and in writing,[98] and further contends that his unpaid suspension, and a state court lawsuit filed by BREC after this case was filed, were adverse employment actions because they would dissuade a reasonable worker from pursuing their rights.[99] Plaintiff alleges that there was a close temporal proximity between his protected activities in raising FLSA concerns post-suspension, his unpaid suspension in December 2024, BREC's affirmance of the suspension, and BREC's filing of the state court lawsuit, which establishes a *prima facie* case of retaliation.[100] Plaintiff also alleges that BREC's inconsistent application of its

---

[96] R. Doc. 13-1, p. 6, citing *Brown v. Bunge Corp.,* 207 F.3d 776, 782 (5th Cir. 2000).

[97] R. Doc. 13-1, pp. 6-7, citing *Boze v. Branstetter,* 912 F.2d 801, 805-06 (5th Cir. 1990). BREC also asserts that, as a political subdivision of the State per La. R.S. § 33:4570.4, La. R.S. § 33:4570.3(B) provides for its discretionary functions, including that its superintendent "has the power to assign duties, to direct and control, transfer, promote, demote, and otherwise change the status of all employees of the commission…." BREC contends that Plaintiff's suspension without pay falls within these discretionary functions and is within BREC's lawful powers and duties. As such, La. R.S. § 9:2798.1 prohibits BREC from bearing any liability for Plaintiff's suspension without pay, which was an employment decision within the exercise of its policymaking or discretionary functions. R. Doc. 13-1, p. 7. While La. R.S. § 9:2798.1 applies to BREC as a political subdivision of the State, and La. R.S. § 9:2798.1(B) provides: "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties," BREC has not provided any argument or authority as to how this state law statute applies to and/or is determinative of BREC's liability under the federal FLSA.

[98] Plaintiff asserts that the DOL's right to sue letter "affirmed Plaintiff's 'private right under the Act to bring an independent suit'"; however, BREC does not dispute that Plaintiff had a right to file suit and is correct that the letter has no bearing on the retaliation claim. R. Doc. 56, p. 2.

[99] R. Doc. 40, pp. 7-8.

[100] R. Doc. 40, p. 8, citing *Shirley v. Chrysler First, Inc.*, 970 F.2d 39 (5th Cir. 1992) (temporal proximity can establish causation).

policies and denial of appeals suggests pretext, because Jarvis informed Plaintiff that his suspension was for "dereliction of job performance," which contradicts the "serious misconduct" standard, and Plaintiff was denied the right to appeal his suspension pursuant to Chapter 10.[101] Finally, Plaintiff contends that he was forced to resign due to intolerable working conditions, which arose due to his unpaid suspension, denial of appeal rights, a hostile work environment, a "witch hunt," and "the lack of accountability for executive decisions."[102]

BREC reiterates that the facts do not establish an adverse action, including Plaintiff's claim of constructive discharge. BREC asserts that employee claims of retaliatory lawsuits are allowed only "under relatively narrow circumstances," and the employee must allege "facts allowing for the reasonable inference that the former employer's legal action is maintained in bad faith and motivated by retaliation," which is required to ensure that the employer is not penalized for exercising its right to seek redress.[103] BREC contends that its suit against Plaintiff has a reasonable basis, as BREC alleges that Plaintiff was grossly negligent in failing to perform essential preventative maintenance, which led to major equipment failures, and grossly negligent in supervision, which led to payroll fraud.[104] BREC also alleges that, while temporal proximity may support an inference of retaliation, the timing of BREC's lawsuit does not reasonably support an inference of retaliation here because "[a] party with a colorable legal grievance may legitimately choose to wait and see whether the other side will sue first, perhaps in the hope that a settlement can be reached before the expense and friction of litigation come into play. But once one side sues,

---

[101] R. Doc. 40, p. 8.

[102] R. Doc. 40, pp. 8-9, citing *Haley,* 391 F.3d 644.

[103] R. Doc. 56, pp. 5-6, citing *Green v. HCTec Partners, LLC,* No. 22-2559, 2024 WL 250787, at *3 (S.D. Tex. Jan. 23, 2024) (citing *Ortiguerra v. Grand Isle Shipyard, LLC,* No. 22-309, 2023 WL 3676793, *4-5 [674 F.Supp.3d 349, 355-56] (E.D. La. May 25, 2023)) (other internal citations omitted).

[104] R. Doc. 56, p. 6.

there is nothing suspicious about the other side filing counterclaims."[105] BREC contends that Plaintiff cannot show that BREC's state court lawsuit lacks a reasonable basis in fact or law.[106] BREC alleges that the denial of an appeal was in accordance with Chapter 10, and Plaintiff has not shown that he was singled out in the application of Chapter 10's allowance for appeals of only terminations and demotions; Plaintiff's unpaid suspension was not unlawful; BREC is not responsible for Plaintiff's belief in a witch hunt; Plaintiff has not shown a retaliatory hostile work environment; "lack of accountability for executive decisions" is merely something that was conveyed to Plaintiff by an attorney; and finally, none of the foregoing, individually or in combination, rises to the level of a constructive discharge.[107]

"The FLSA makes it unlawful to 'discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter.'"[108] "A retaliation claim under the FLSA is subject to the *McDonnell Douglas* analytical framework."[109] "Under the FLSA, 'a plaintiff must make a *prima facie* showing of: (1) participation in protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action.'" When the plaintiff 'meets this burden, the defendant must then articulate a legitimate, non-retaliatory reason for its decision. The burden then shifts to the plaintiff to demonstrate that the proffered reason is a pretext for discrimination.[110]

---

[105] R. Doc. 65, p. 6, citing *Green*, 2024 WL 250787, at *4 (internal citation omitted).

[106] R. Doc. 56, p. 6.

[107] R. Doc. 56, p. 7.

[108] *Lasater v. Texas A & M Univ.-Commerce,* 495 Fed.Appx. 458, 461 (5th Cir. 2012), citing 29 U.S.C. § 215(a)(3).

[109] *Lasater,* 495 Fed. Appx. at 461, citing *Kanida v. Gulf Coast Med. Pers. LP,* 363 F.3d 568, 577 (5th Cir. 2004).

[110] *Starnes v. Wallace*, 849 F.3d 627, 631-32 (5th Cir. 2017), citing *Hagan v. Echostar Satellite, LLC,* 529 F.3d 617, 624 (5th Cir. 2008).

23

Plaintiff alleges retaliation before his suspension; post-suspension retaliation leading to his constructive discharge; and post-employment retaliation; however, Plaintiff's FLSA retaliation claims either fail one of the three prongs required to establish a *prima facie* case, or because BREC had a legitimate non-retaliatory reason to take the complained-of actions.

The allegations of retaliation that pre-date Plaintiff's unpaid suspension, *i.e.*, stripping Platiniff of surveillance access, failing to support his investigation of Barrett for payroll fraud, subjecting Plaintiff to Barrett's grievance, and that Internal Audit did not interview Plaintiff during the investigation that led to his suspension, fail to allege participation in any FLSA-protected activities. Even if Plaintiff complained to BREC about these issues, none of these allegations involve an activity that could have reasonably put BREC on notice of a *FLSA* violation.[111] Rather, they consist of Plaintiff's disagreements with how BREC handled Barrett's situation[112] and how BREC handled its investigation of Plaintiff's supervision of these employees, none of which implicate the FLSA. BREC's revocation of Plaintiff's access to camera surveillance footage also was not an adverse employment action,[113] as that action would not dissuade a reasonable employee

---

[111] *See Lasater* 495 Fed.Appx. at 461 ("To demonstrate that she participated in an FLSA protected activity, Lasater must first demonstrate that she filed a complaint. In order for an employee's communication to constitute a 'complaint,' the 'employer must have fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation' and the 'complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, **as an assertion of rights protected by the [FLSA] and a call for their protection**.' *Kasten v. Saint–Gobain Performance Plastics Corp.,* ––– U.S. –––, [563 U.S. 1] 131 S.Ct. 1325, 1334–35, 179 L.Ed.2d 379 (2011).")(emphasis added).

[112] Regarding Plaintiff's claim that BREC fails to support his investigation of Barrett's payroll fraud, that is not entirely correct. Although Plaintiff suspended Barrett and Barrett was permitted to return to work, the Final Report concluded that Barrett engaged in payroll fraud and required repayment of the funds Barrett was improperly paid. R. Doc. 13-2, p. 30.

[113] *See, e.g., Stewart v. Mississippi Transp. Comm'n,* 586 F.3d 321, 332 (5th Cir. 2009) (holding that an employee's complaints of personal items being taken from her desk, the locks on her office being changed and not being allowed to close her office door, and being chastised by superiors and ostracized by co-workers, did not, as a matter of law, rise to the level of material adversity, but instead fell into the category of "petty slights, minor annoyances, and simple lack of good manners" that the Supreme Court has recognized are not actionable retaliatory conduct).

from making or supporting a complaint of discrimination.[114] Further, BREC's Surveillance Camera Use Policy restricts access to camera surveillance to certain authorized personnel, and requires that requests to review footage be made in writing on a form, or through email to a designated person.[115] While Plaintiff disputes the revocation of his access, he has not provided evidence that he properly requested or was granted access.[116]

Next, Plaintiff's inability to formally appeal his suspension was in accordance with BREC's policy applicable to all employees,[117] which was a legitimate, nondiscriminatory reason for denying Plaintiff an appeal, even if there were prior conflicting statements by human resources regarding the availability of an appeal.[118] Further, as BREC points out, Plaintiff has not shown that

---

[114] *See Mora v. Affiliated Customs Brokers USA, Inc.,* No. 13-367, 2015 WL 12551108, at *7 (W.D. Tex. Mar. 16, 2015) ("Almost ten years ago, the Supreme Court explicitly addressed the governing legal standard for an adverse employment action in the context of a retaliation claim. In *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006) ('*Burlington*'), the Court rejected the very argument that Defendant embraces here: that is, that an employer's retaliatory act must affect a plaintiff's 'compensation, terms, conditions, or privileges of employment' in order to form the basis of an actionable retaliation claim. *Id.* at 61. Instead, consistent with the underlying purpose of Title VII's anti-retaliation provision, the Court held that an 'adverse employment action' in the retaliation context is any act that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' *Id.* at 68 (internal quotation marks and citations omitted); *see also Grice v. FMC Techs. Inc.*, 216 Fed.Appx. 401, 407 (5th Cir. 2007) ('In *Burlington Northern*, the Court rejected the approach taken by several circuits, including this one, that required plaintiffs to demonstrate an 'ultimate employment decision' to satisfy the 'adverse employment action' element of a retaliation claim.'); *accord McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007). The *Burlington* standard is objective in the sense that it does not render actionable the sorts of 'petty slights, minor annoyances, and simple lack of good manners' that a reasonable worker would deem trivial. *Burlington*, 548 U.S. at 68. … Although the Supreme Court's decision in *Burlington* was decided under Title VII's antiretaliation provision, the Fifth Circuit has joined numerous other courts in holding that the *Burlington* standard applies with equal force to retaliation claims brought under the FLSA. *See Noack v. YMCA of Greater Hous. Area*, 418 Fed.Appx. 347, 353 (5th Cir. 2011)….").

[115] R. Doc. 13-2, p. 2, ¶ 7; R. Doc. 13-2, pp. 14-18 (Surveillance Camera Use Policy).

[116] *See, e.g.,* R. Doc. 40-3, pp. 9, 27.

[117] R. Doc. 13-2, p. 7. Plaintiff was not dissuaded from raising his concerns several times by email and he also filed a complaint with the DOL. R. Doc. 40-3 p. 24.

[118] Though there appears to be some dispute between the parties regarding which version of the Rules and Regulations is controlling, that dispute is not material to this issue. The version of the Rules and Regulations BREC says are controlling did not permit "appeals," other than for demotions or terminations, but did provide for a grievance procedure to resolve other kinds of employee dissatisfaction. Plaintiff does not allege that he attempted to invoke that procedure, or that he was precluded from invoking it. R. Doc. 13-2, p. 6. Additionally, the appeals procedure Plaintiff claims controls would have started with an appeal to the Superintendent. Plaintiff sent Wilson an email complaining of the suspension and also sent an email to the Board of Commissioners. The suspension was affirmed by Boykin, BREC Chief Administrative Officer and General Counsel. R. Doc. 40-3, p. 33. Plaintiff also states that he did appeal. R. Doc. 40, ¶ 9; R. Doc. 40-2, ¶ 11. It does not appear from these facts that Plaintiff was actually denied review of his suspension.

he was singled out, that anyone else was treated more favorably, or that the no-appeal policy for suspensions was applied to him in a retaliatory manner.[119]

As to the third prong, Plaintiff fails to show a causal connection between his FLSA complaints and the suspension because all of Plaintiff's oral and written complaints of FLSA violations to BREC arose *after* Plaintiff's suspension.[120]

Plaintiff's claim of constructive discharge fails because Plaintiff has not established that he was subjected to an intolerable working environment. Constructive discharge requires a showing of a greater degree of harassment than what must be shown for a hostile work environment,[121] but Plaintiff has not provided any evidence of a hostile work environment. Setting aside whether a five-day unpaid suspension would cause a reasonable employee to resign, the suspension itself was justified by BREC's investigation, concluding that one of employees for which Plaintiff had supervisory responsibility committed payroll fraud, which Plaintiff does not dispute.[122] This is a legitimate non-retaliatory reason for the suspension.[123] Plaintiff does not refute

---

[119] While discovery was stayed until the parties filed their Status Report (R. Doc. 10), Plaintiff did not seek Rule 56(d) relief until he requested leave to file his sur-reply, which is not being considered. Further, his request for 56(d) relief in the sur-reply is not related to the retaliation claim. R. Doc. 54-2, p. 6 ("If the Court concludes that any of these issues could be dispositive, Rule 56(d) relief is appropriate to allow targeted discovery in Defendant's possession: (1) payroll/time records and deduction logs for Plaintiff and similarly situated exempt employees; (2) disciplinary files reflecting unpaid suspensions and the policies invoked; and (3) the operative written "workplace conduct" policies during 2024-2025 and any safe-harbor policy under § 541.603.") The request is otherwise unwarranted, as noted, above. *See* n. 89.

[120] R. Doc. 40-3, pp. 9, 23, 26, 35.

[121] *See Garvin v. Southwestern Correctional, L.L.C.,* 391 F. Supp. 3d 640, 654 (N.D. Tex. 2019) ("…the Fifth Circuit has also stated that in general, constructive discharge requires a greater degree of harassment than that sufficient for a hostile-work-environment claim….") (citing *Brown*, 237 F.3d at 566 and *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir. 1992), *aff'd*, 511 U.S. 244 (1994) (assuming without deciding that the Fifth Circuit had correctly decided this issue) (other citation omitted).

[122] *Compare* 13-2, p. 29 ("Bryson's actions constitute payroll fraud by inflating his work hours.") *with* R. Doc. 1, ¶ 6 ("In October 2024, Plaintiff suspended a Facility Manager with pay pending an internal investigation into payroll fraud. This action was taken after Plaintiff … identified a pattern of suspicious 'worked hours entries ….") and R. Doc. 40-1 (although P disputes that his actions warrant an exempt salary deduction, he does not challenge the conclusion that his lack of oversight facilitated payroll fraud).

[123] *See, e.g., Brooks v. Houston Indep. Sch. Dist.,* 86 F. Supp. 3d 577, 589 (S.D. Tex. 2015) ("Even if Brooks's suspension was an adverse employment action, she has not raised a factual dispute as to whether HISD's legitimate nondiscriminatory reason for her suspension—her extensive disciplinary history and recent write-ups—was a pretext

Internal Audit's findings regarding payroll fraud and the lack of adequate financial reporting, and therefore has not shown that the suspension was a pretext for retaliation, which is his burden.[124]

Following his suspension, Plaintiff was reinstated to work *in his same job title, with the same job duties and responsibilities, at the same rate of pay*, despite his emails raising complaints of FLSA violations. There is no evidence that Plaintiff was treated harshly by anyone upon his return to work, other than the allegation that, in one conversation, Jarvis asked Plaintiff about the basis for Plaintiff's request for leave without pay, in a hostile way.[125] However, one hostile conversation does not rise to the level of a hostile work environment.[126] Rather, Plaintiff admits that he sent several post-suspension emails lodging complaints, which were met with silence, not actively hostile behavior.[127]

Plaintiff's subjective belief of hostile behavior in the form of a "witch hunt" because his camera access was taken away, Internal Audit handled his investigation, and BREC reinstated Barrett, as well as Plaintiff's inability to appeal, fail to show intolerable working conditions; rather,

---

for retaliation. The summary judgment evidence shows that Brooks was written up for violating work rules…."). *See also Guadalajara v. Honeywell Int'l, Inc.,* 224 F.Supp.3d 488, 509 (W.D. Tex. 2016) ("An employer produces a legitimate, non-retaliatory reason for the purposes of the second stage of the *McDonnell Douglas* when it articulates that an employee was terminated for violation of a company policy. *See Crisp v. Sears Roebuck & Co.*, 628 Fed.Appx. 220, 224 (5th Cir. 2015); *Irons v. Aircraft Serv. Int'l, Inc.*, 392 Fed.Appx. 305, 308–09, 312–13 (5th Cir. 2010)….")(other citations omitted).

[124] *Saketkoo v. Administrators of Tulane Educational Fund,* 31 F.4th 990, 1000 (5th Cir. 2022) ("If the plaintiff establishes a prima facie case, then the employer has the burden of production to provide 'a legitimate, non-discriminatory reason' for the adverse employment action." *Id.* (quoting *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual." *Id.* Again, the burden of persuasion remains with the employee throughout. *See id.*").

[125] R. Doc. 40-3, p. 9.

[126] *See Brown,* 207 F.3d at 782 and *Boze,* 912 F.2d at 805-06, and *see Pennsylvania State Police,* 542 U.S. at 131 ("For an atmosphere of harassment or hostility to be actionable, the offending behavior must be sufficiently severe or pervasive to alter the victim's employment conditions and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49. A hostile-environment constructive discharge claim entails something more: working conditions so intolerable that a reasonable person would have felt compelled to resign.").

[127] Plaintiff states in the Complaint that, despite his multiple, post-suspension emails, his requests were "unreturned," and "not responded to," and the substance was not addressed, until Plaintiff received Boykin's March 25, 2025 email. R. Doc. 1, ¶¶ 16-18.

they were all policy decisions.[128] Similarly, Plaintiff's subjective belief, or that of the attorney he consulted, of a perceived lack of accountability by BREC for its executives' decisions is Plaintiff's opinion, not evidence of a hostile work environment or retaliation. None of the foregoing actions show an invidious intent to create intolerable working conditions so as to compel Plaintiff's resignation.

Finally, Plaintiff's retaliation claim involving BREC's state court lawsuit filed against Plaintiff, which occurred post-employment and after Plaintiff filed his Complaint in this Court, fails because Plaintiff never asserted this allegation in an amended Complaint. While Plaintiff filed a "Notice" on August 1, 2025 regarding this issue, the Notice specifically states: "Plaintiff has filed a Motion to Stay or Dismiss the state court proceedings on the grounds of abuse of process, lis pendens, and preemption by federal claims. Plaintiff also reserves the right **to seek leave to amend the federal complaint to include this retaliatory conduct as an additional claim**."[129] Although Plaintiff acknowledged the need to file an amended complaint and reserved the right to seek leave to do so to assert the state court action as an additional claim of retaliation, Plaintiff never sought leave to amend. Instead, Plaintiff chose to challenge BREC's suit in state court. Furthermore, and per his own acknowledgement, this is not a situation where Plaintiff was unaware of the need to file an amended pleading or was unable to do so. Plaintiff is a prolific filer, and has filed, and sought leave to file, several motions, oppositions, and replies.[130] Thus, the issue of

---

[128] *Williams v. Lakeview Loan Servicing LLC,* 694 F. Supp. 3d 874, 884 (S.D. Tex. 2023)("…[c]onclu[sory] allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (citation omitted)."). Plaintiff also references a denial of due process (R. Doc. 40-1, p. 5), but Plaintiff did not allege a cause of action for denial of due process in his Complaint.

[129] R. Doc. 24, p. 3, ¶ 7.

[130] R. Docs. 14, 16, 22, 25, 30, 33, 40, 44, and 52-55.

whether BREC's state court lawsuit constitutes retaliation is not properly before the Court.[131] Even if it were, the Notice states that, in the state court suit, BREC seeks relief from Plaintiff for some of the same actions underlying Plaintiff's suspension.[132] As such, BREC had an objectively reasonable basis to bring the suit, at least on the suspension-related grounds, because Plaintiff was found to have engaged in misconduct, involving misuse of public funds, following an investigation.[133] Again, Plaintiff does not deny the finding that an employee under his supervision committed payroll fraud.

Because Plaintiff cannot establish a prima facie showing of a retaliation claim and/or because there is no issue of fact that BREC had a legitimate, non-retaliatory reason for its actions, Plaintiff's retaliation claim also fails and summary judgment on this claims is also proper.

## III.    RECOMMENDATION AND ORDER

There is no genuine issue of material fact that Plaintiff's unpaid suspension did not result in the loss of his FLSA-exempt status. Additionally, there is no genuine issue of material fact that Plaintiff was not subjected to unlawful retaliation by BREC.

Accordingly,

---

[131] *Santos v. Coleman World Grp., LLC,* No. 16-195, 2017 WL 5474061, at *4 (W.D. Tex. Nov. 13, 2017) ("Ms. Santos failed to plead any of the elements to an overtime or travel time claim in her complaint; indeed, her complaint contains no explicit mentions of overtime or travel time compensation to put Coleman on notice that she was alleging those claims. Accordingly, the Court finds that Ms. Santos is not entitled to relief on the overtime and travel time claims she now asserts. *See Cutrera v. Board of Sup'rs of Louisiana State University*, 429 F.3d 108, 113 (5th Cir. 2005) ('A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.').").

[132] R. Doc. 24, p. 1, ¶ 2. The state court Petition is not in the record.

[133] *See Green,* 2024 WL 250787 at *3 (to plead a claim of retaliation based on an employer's lawsuit, "the court must find (1) the employer acted with retaliatory motive and (2) that the employer's counterclaims lack a reasonable basis in fact or law") (citing *Ortiguerra*, 2023 WL 3676793, at *5), and *see Green* at *id.,* citing *Aday v. Westfield Ins. Co.*, No. 21-3115, 2022 WL 203327, at *13 (6th Cir. Jan. 24, 2022) ("[A]n employer is not barred from filing a well-grounded, objectively based action against an employee who has engaged in a protected activity.") (other citation omitted).

**IT IS RECOMMENDED** that the Motion for Summary Judgment,[134] filed by Defendant the Recreation and Park Commission for the Parish of East Baton Rouge, be **GRANTED**, and all claims of Plaintiff Daniel J. Burg in this case be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that Defendant's 29 C.F.R. § 541.602(a)(1) argument in its Second Reply[135] not be considered, and therefore, that the Motion for Leave to File Sur-Reply,[136] filed by Plaintiff Daniel J. Burg, which primarily seeks to address it, be **DENIED.**

Considering the recommendation for the dismissal of Plaintiff Daniel J. Burg's claims, **IT IS ORDERED** that all other pending Motions[137] be **TERMINATED** without prejudice to reurging, if the case is not dismissed.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to docket BREC's Reply to Plaintiff's Amended Statement of Disputed Material Facts[138] into the record of this matter.

**IT IS FURTHER ORDERED** that a copy of this Report and Recommendation be mailed to Plaintiff Daniel J. Burg to his address of record on PACER by regular mail and certified mail, return receipt requested.

Signed in Baton Rouge, Louisiana on March 11, 2026.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[134] R. Doc. 13.

[135] R. Doc. 56, the middle of p. 2, and the bottom of p. 4 to the middle of p. 5.

[136] R. Doc. 54.

[137] R. Docs. 45, 48.

[138] R. Doc. 49-3.