UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DANIEL J BURG                                             CIVIL ACTION

VERSUS

THE RECREATION AND PARK                          NO. 25-00427-BAJ-EWD
COMMISSION FOR THE PARISH OF
EAST BATON ROUGE (BREC)

RULING AND ORDER

Before the Court is Defendant the Recreation and Park Commission for the Parish of East Baton Rouge's ("BREC") **Motion for Summary Judgment (Doc. 13)**. The Motion is opposed. (Doc. 14–Doc. 16; Doc. 19; Doc. 40; Doc. 44). Defendant filed a Reply Brief. (Doc. 20– Doc. 21; Doc. 56).

The Magistrate Judge issued a **Report And Recommendation (Doc. 62, the "Report")** recommending that the Court grant Defendant's Motion and dismiss Plaintiff's claims against it with prejudice.[1] (Doc. 62 at 31). The Report found that there are no genuine issues of material fact that: (1) Plaintiff's unpaid suspension did not result in the loss of his Fair Labor Standards Act ("FLSA") exempt status; and (2) Plaintiff was not subjected to unlawful retaliation by Defendant. (*Id.* at 30).

Plaintiff objects to the Report. (Doc. 65). Plaintiff does not object to the Report's conclusion that he was not subjected to unlawful retaliation. (*See generally id.*).

---

[1] The Report also recommends that the Court deny Plaintiff's **Motion for Leave to File Sur-Reply (Doc. 54)** because Plaintiff's proposed Sur-Reply addresses an additional argument from Defendant that the Report recommends the Court disregard. (*Id.* at 31).

Instead, Plaintiff focuses his Objection on whether a five-day unpaid suspension resulted in the loss of his exempt status under the FLSA. (*Id.*).

## I.    BACKGROUND

The Magistrate Judge described the relevant facts as follows:

BREC is a political subdivision of the state of Louisiana. From March 5, 2018 through April 21, 2025, Plaintiff was BREC's salaried Aquatics Manager. According to BREC's Aquatics Manager job description, upon which Plaintiff relies, the Aquatics Manager "[p]erforms administrative, supervisory, and professional work in operation and maintenance of [BREC] swimming pools, spray pads, and Liberty Lagoon water park".... As Aquatics Manager, Plaintiff's job specifications included the ability to supervise and train lifeguards and establish and maintain effective working relationships with employees, as well as knowledge of BREC's Rules and Regulations for properties and activities. Plaintiff's job duties included, "oversee[ing] and coordinat[ing] the day to day operation [,] including but not limited to: ... training, scheduling, certification and performance of employees...in compliance with all federal state and local regulations for the operation of public swimming pools." BREC has Rules and Regulations that govern disciplinary actions, among other matters, and Plaintiff signed a form acknowledging BREC's Rules and Regulations in 2018.

BREC's Internal Audit team conducted an internal process review of Plaintiff and two employees reporting to Plaintiff at Liberty Lagoon: Assistant Aquatics Manager, Bryson Barrett ("Barrett"), and Head Lifeguard, Olivia Durand ("Durand"). Plaintiff was responsible for the supervision of these employees. In the September 23, 2024 Final Report of the investigation (the "Final Report"), Internal Audit found instances in which Barrett and Durand clocked in to work, and then left work to engage in non-work-related personal activities without clocking out. The Final Report concluded that Barrett's actions resulted in payroll fraud. Plaintiff does not challenge the payroll fraud findings regarding Barrett and all parties acknowledge that, prior to his suspension, Plaintiff conducted his own investigation of Barrett's timekeeping practices, and similarly found that Barrett was not accurately reporting his time, for which Plaintiff suspended Barrett. Plaintiff says he used BREC's camera surveillance system to conduct his investigation of Barrett, but BREC took away Plaintiff's camera access, removed Plaintiff from his investigation, and turned the investigation over to Internal Audit. Plaintiff further contends that BREC reinstated Barrett

without consulting Plaintiff, and Barrett filed a grievance against Plaintiff.

The Final Report also found that, while Barrett retained receipts for work-related purchases made on his BREC-issued purchasing card ("P-card)," Barrett did not upload his P-card receipts as required because he did not have access to the applicable program, and thus the purchases were not reported; accurate P-card statements were not presented to Plaintiff for review, as required; and the transactions were excluded from accurate reporting and reconciliation by BREC's Finance Department. Plaintiff also does not dispute, in his Complaint or Opposition, Internal Audit's findings regarding his lack of review of Barrett's P-card purchases. The Final Report also found that Plaintiff's "limited presence at Liberty Lagoon, combined with the lack of adequate training for young managerial staff, contributed to payroll fraud and timekeeping violations." Plaintiff does not dispute that his presence at Liberty Lagoon was limited, that Barrett and Durand lacked sufficient training, or that payroll fraud and timekeeping violations were found.

According to Plaintiff, BREC's Human Resources Director, Darlene Jarvis ("Jarvis"), contacted Plaintiff to report for a meeting on December 6, 2024; however, Plaintiff was on personal leave that day, so the meeting was rescheduled for December 9, 2024 to accommodate Plaintiff. Jarvis met with Plaintiff on December 9, 2024 and advised him that BREC was suspending him for five days without pay effective immediately, pending final investigation and disciplinary action for "P-Card Mismanagement and Lack of Oversight" and "Inadequate Supervisory Oversight of designated area." Plaintiff's suspension letter instructed him to return to work on December 16, 2024. Plaintiff alleges that when he reported back to work "no investigation findings were available and Plaintiff was told to return to work." On December 19, 2024, Plaintiff received his full paycheck; however, on his January 9, 2025 paycheck, Plaintiff's wages were reduced to reflect the five-day suspension without pay.

Exhibits attached to Plaintiff's Affidavit, unobjected to by Defendant, reflect that after Plaintiff returned to work from the suspension, but prior to his ultimate departure from BREC, Plaintiff sent emails to Jarvis, Wilson, Boykin and/or the BREC Commissioners regarding his suspension without pay, the Internal Audit investigation, and BREC's policies. On March 25, 2025, Plaintiff received Boykin's email response to Plaintiff's email from the prior day. Boykin's email informed Plaintiff that his five-day suspension was upheld, and that, pursuant to Section 8 of Chapter 10, disciplinary matters other than termination and

3

demotion are not subject to appeal. On April 21, 2025, BREC received a letter from Plaintiff, dated April 16, 2025, with the subject line "Constructive Resignation," in which Plaintiff stated his "formal resignation" from employment.

On May 20, 2025, Plaintiff filed suit in this Court alleging BREC violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. 201, *et seq.*, 31 when it deducted from his wages for the five-day suspension and failed to consistently apply its policies, which "undermined the integrity of Plaintiff's exempt status," and additionally, [] it engaged in retaliation, which resulted in Plaintiff's constructive discharge.

(Doc. 62 at 3–9 (internal citations omitted)).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 72 confers upon Magistrate Judges the responsibility to make determinations or recommendations for pretrial matters. When a pretrial matter concerns a matter that is dispositive of a claim or defense, the Magistrate Judge may make proposed findings and recommendations, and the parties may file specific written objections to same. Fed. R. Civ. Pro. 72(b).

Rule 72(b)(3) dictates that the District Judge must determine *de novo* any part of the Magistrate Judge's disposition that has been properly objected to. The District Judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

## III.    DISCUSSION

In his Objection, Plaintiff argues that the Report: (1) extends the narrow workplace conduct exception in 29 C.F.R. § 541.602(b)(5) beyond its proper scope; (2) treats December 9, 2024 as a full unpaid suspension day despite the fact that

4

Plaintiff was required to report for a mandatory Human Resources meeting that morning; (3) resolves disputed inferences against Plaintiff; and (4) recommends final summary judgment while discovery was otherwise stayed and the relevant records remained in Defendant's control. (Doc. 65 at 1). Thus, Plaintiff asks the Court to permit targeted discovery and further proceedings before any final judgment is entered on his "salary-basis" claim. (Doc. 65-1 at 8).

Plaintiff's FLSA claim centers around whether his five-day unpaid suspension violated the salary basis test such that he lost his exempt status. (Doc. 62 at 15). The Report concluded that Plaintiff's employment satisfied the "salary basis" component of an FLSA exemption. (*Id.*). The Report further concluded that Plaintiff did not lose his exempt status when Defendant suspended him from work for five days without pay pending final investigation and disciplinary action for "P-Card Mismanagement and Lack of Oversight" and "Inadequate Supervisory Oversight of designated area." (*Id.* at 6, 15).

The Report reasoned that the unpaid suspension was permissible under 29 C.F.R. § 541.602(b)(5), which permits unpaid suspensions of one or more full days imposed in good faith pursuant to a workplace policy applicable to all employees for infractions of workplace conduct rules, which applies to serious misconduct. (*Id.* at 13–17). The Report emphasized, however, that "even if there is a fact question as to whether Plaintiff was suspended for serious misconduct, that does not create a genuine issue of material fact that Plaintiff lost his salaried exemption, as Plaintiff contends, because a five-day suspension without pay over the course of Plaintiff's

5

seven year period of employment is isolated, and not an 'actual practice' of improperly making deductions." (*Id.* at 17–18).

Plaintiff objects that the "workplace conduct" exception is limited to serious workplace misconduct such as "sexual harassment, violence, drug or alcohol violations, or violations of state or federal law" rather than ordinary job performance issues. (Doc. 65-1 at 2). Plaintiff contends that the Report expanded the lawful scope of the workplace conduct exception by relabeling performance issues as misconduct. (*Id.* at 3). Plaintiff also argues that the Report improperly treated December 9, 2024, as a full unpaid suspension day despite the fact that Plaintiff was required to report for a mandatory Human Resources meeting that morning. (*Id.* at 4). Plaintiff further contends that the Report drew numerous factual inferences against Plaintiff and in favor of Defendant, contrary to the applicable legal standard on summary judgment. (*Id.* at 5).

Assuming *arguendo* that Plaintiff's alleged conduct was insufficient to fall into the "workplace conduct" exception, that the Report improperly treated December 9, 2024 as a full unpaid suspension day, and that the Report made improper factual inferences against Plaintiff, the weight of the jurisprudence indicates that a one-time deduction over seven years of employment does not rise to the level of an "actual practice" of making improper deductions, such that Plaintiff did not lose his exempt status. *Silloway v. City & Cnty. of S.F.*, 117 F.4th 1070, 1084 (9th Cir. 2024), *cert. denied sub nom. Silloway v. City & Cnty. of S.F., Cal.*, 145 S. Ct. 1432 (2025) (citing *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508,

6

521 (S.D.N.Y. 2013) ("[A]n employee's exempt status is lost only if there is either an actual practice of making [improper] deductions or an employment policy that creates a 'significant likelihood' of such deductions.") (internal quotations omitted; internal citations omitted); *Auer v. Robbins*, 519 U.S. 452, 462 (1997) (just one improper deduction occurring under "unusual circumstances" did not show an actual practice); *Childers v. City of Eugene*, 120 F.3d 944, 947 (9th Cir. 1997) (one improper deduction over ten years was not an actual practice); *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1189–90, 1194–96 (10th Cir. 2015) (one improper deduction during employee's more than four years of employment did not show an actual practice); *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 372 (7th Cir. 2005) (three improper deductions over 470,000 employee work weeks did not show an actual practice); *DiGiore v. Ryan*, 172 F.3d 454, 457–58, 464–65 (7th Cir. 1999) (five improper deductions over about three years did not show an actual practice), *overruled on other grounds by Whetsel v. Network Prop. Servs., LLC*, 246 F.3d 897, 904 (7th Cir. 2001); *Aiken v. City of Memphis*, 190 F.3d 753, 762 (6th Cir. 1999) (one improper deduction was not an actual practice); *Carpenter v. City & Cnty. of Denv.*, 115 F.3d 765, 767 (10th Cir. 1997) (two allegedly improper deductions under unusual circumstances did not show an actual practice); *Ahern v. Cnty. of Nassau*, 118 F.3d 118, 120–21 (2d Cir. 1997) (one instance of pay docked for violating employment rules was not an actual practice); *Rebischke v. Tile Shop, LLC*, 229 F. Supp. 3d 840, 852 (D. Minn. 2017) (concluding that improper deductions in 0.5% of paychecks over about three years was an "isolated" practice); *Martinez,*

930 F. Supp. 2d at 522 (three improper deductions among five employees over four years did not show an actual practice); *Crabtree v. Volkert, Inc.*, 2012 WL 6093802, at *9 (S.D. Ala. Dec. 7, 2012) (improper deductions from 1% of checks issued to certain employees over about four years showed an isolated practice)). Additional discovery would not alter the jurisprudence on the issue.

Accordingly, the Court will approve the Report and adopt it as the Court's opinion in this matter.

## IV. CONCLUSION

After carefully considering Plaintiff's Complaint, the Report, the relevant briefing, and the entirety of the record before the Court, the Court **APPROVES** the Magistrate Judge's Report and Recommendation and **ADOPTS** it as the Court's opinion in this matter.

Accordingly,

**IT IS ORDERED** that Defendant the Recreation and Park Commission for the Parish of East Baton Rouge's **Motion for Summary Judgment (Doc. 13)** is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendant the Recreation and Park Commission for the Parish of East Baton Rouge are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that **Plaintiff's Motion for Leave to File Sur-Reply (Doc. 54)** is **DENIED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail a copy of

8

Court's Ruling and Order to Plaintiff Daniel J. Burg to his address of record on PACER by regular mail and certified mail, return receipt requested.

Final judgment shall be entered separately.

Baton Rouge, Louisiana, this 30th day of March, 2026

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

9